## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DONALD BATOR, EDMOND W. MOSES, CHRISTOPHER O'MALLEY, MICHAEL ANTHONY PAPPA and ROGELIO JIMENEZ, JR. on behalf of themselves and all others similarly situated, | ) ) ) ) ) | No. |
| | ) | JURY DEMAND |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THE BOARD OF TRUSTEES OF THE INTER-LOCAL PENSION FUND of the Graphic Communications Conference of the International Brotherhood of Teamsters. LOCAL NO. 458-M GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, DISTRICT COUNCIL NO. 4 GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, DONALD BATOR, EDMOND W. MOSES, CHRISTOPHER O'MALLEY, MICHAEL ANTHONY PAPPA and ROGELIO JIMENEZ, JR. (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Larry D. Drury, Ltd., and as their complaint against the Defendants, THE BOARD OF TRUSTEES OF THE INTER-LOCAL PENSION FUND of the GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS (hereinafter, "Trustees"), LOCAL NO. 458-M GRAPHIC COMMUNICATIONS INTERNATIONAL UNION ("Local 458M"), DISTRICT COUNCIL NO. 4 GRAPHIC

COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS ("District Council 4"), and THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, ("International") hereinafter respectively, "Local 458M", "District Council 4", "International", and collectively "Union" state as follows:

## INTRODUCTION

1.      Plaintiffs bring this suit on behalf of themselves and all others similarly situated from 2008 through the date of final judgment herein for Defendants' breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ¶¶1001-1461, and for state law claims of fraud and breach of contract.

2.      Defendant Trustees is named as a fiduciary to the "The Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters" (hereinafter the "Fund"), in the Fund's Trust Indenture.   Defendant Trustees possesses and exercises the authority to control and manage the operation and administration of the Fund.

3.      As a fiduciary to the Fund, Defendant Trustees is obligated and must solely act in the interest of those whom the Fund was established to benefit; eligible members of local unions affiliated with the International Brotherhood of Teamsters, who are participants in the Fund.

4.      Defendant Trustees breached its fiduciary duty to Plaintiffs and the Class by failing to enforce the Trust Indenture's terms.  Specifically, Defendant Trustees failed to enforce the terms within the Summary Plan Description portion of the Trust Indenture that stated all members of a group that voted to participate in the Fund must become and remain participants in the Fund.  Further, Defendant Trustees failed to enforce the terms contained in Article IV, Sec 1(c) of the Trust Indenture, which provided that any participating local union, that determined by official action of its membership with the prior approval of Defendant Trustees, that its members'

2

contributions should be set higher than $5.00 a week, shall apply that formula to all participating members of the local union.

5.     Defendant Union is a fiduciary of the Fund because Defendant Union manages the operation of the Fund through enforcement of its By-Laws, as acknowledged by the Summary Plan Description portion of the Trust Indenture.  Through selective enforcement of its By-Laws, specifically, Article 14.2(b) as alleged herein, Defendant Union exerts control over the amount of revenue that is, or is not, contributed to the Fund. Through this improper selective enforcement of its By-Laws, Defendant Union directly manages and exerts control over the amount of revenue, i.e. plan assets that are used to finance the Fund.

6.     As a fiduciary to the Fund, the Defendant Union is obligated and must solely act in the interest of those whom the Fund was established to benefit; eligible members of local unions affiliated with the International Brotherhood of Teamsters, who are participants in the Fund.

7.     Defendant Union breached its fiduciary duty to Plaintiffs and the Class by selective enforcement of Defendant Local 458M's By-Laws to improperly limit the amount of revenue that was to be paid to the Fund in the form of member contributions.

**JURISDICTION AND VENUE**

8.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) because it is an action brought under 29 U.S.C. §1132(a)(2) and (3).  This Court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

9.     Venue is proper pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because the Fund is administered in the district, the alleged breaches took place in the district, and one or more of the Defendants reside in the district.

**PARTIES**

10.     Plaintiffs are former members of Local No. 458M Graphic Communications International Union (hereinafter, "Local 458M"), an employee organization as defined under 29 U.S.C. §1002(4) and Plaintiffs are participants in the Fund as defined under 29 U.S.C. §1002(7) because they are or may become eligible to receive a benefit from the Fund.

11.     Defendant Trustees is a named fiduciary of the Fund as listed in the Trust Indenture and Defendant Trustees is a fiduciary to the Fund because it exercises discretionary authority and/or control respecting the management or disposition of its assets, and has discretionary responsibility in the administration in the Fund.  29 U.S.C.  §1002(21)(A)(i) and (iii).  Defendant Trustees maintains its office in Carol Stream, Illinois.

12.     Defendant Union collectively comprises individual Defendants, Local No. 458M Graphic Communications International Union. (Local 458M) and District Council No. 4 Graphic Communications Conference of the International Brotherhood of Teamsters (District Council 4), and The International Brotherhood of Teamsters (International),  all of which comprise employee organizations as defined under 29 U.S.C. §1002(4).

13.     Defendant Local 458M and District Council 4 maintain their principal place of business in Carol Stream, Illinois and Defendant International maintains its principal place of business in Washington D.C.

14.     Defendant Union is a fiduciary to the Fund because it directly manages and exerts control over the amount of revenue, i.e. plan assets that are used to finance the Fund.

**THE INTER-LOCAL PENSION FUND**

15.     The Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters, is a Defined Benefit Plan, with assets in excess of 293

million dollars and is comprised of members from approximately 69 Local Unions located throughout the United States. The Fund is made possible by and for the benefit of contributions from participating union members.

16. The Fund is governed by a Summary Plan Description and Trust Indenture, ("Trust Indenture") which consists of terms, promises and conditions between Fund participants and the Fund. A copy of the Fund's Summary Plan Description and Trust Indenture is attached hereto as Exhibit A.

17. The Fund is administered by Defendant Trustees which has joint authority to control and manage the operation and administration of the Fund. The Fund's Board of Trustees is comprised of officials from certain participating local unions, including, but not limited to a trustee from Local 458M.

18. Per the terms of the Trust Indenture, the Fund may be sued as an entity under Title I of ERISA.

### THE UNION (Local 458M, District Council 4, and International)

19. Defendant Local 458M is governed by its By-Laws and Executive Board. Local 458M holds membership meetings and votes on the business of Local 458M, specifically here, any changes or revisions regarding contributions to the Fund. A copy of Local 458M's Constitution and By-Laws is attached here as Exhibit B.

20. Defendant District Council 4 is governed by its Constitution and By-Laws and its Executive Board. District Council 4 oversees its business and the business of Local 458M. A copy of District Council 4's Constitution and Laws is attached here as Exhibit C.

21. Defendant District Council 4 came into existence and was created in October of 2006, when four local unions, including Defendant Local 458M, bound themselves together into

a single and unified labor organization entitled District Council No. 4 Graphic Communications Conference of the International Brotherhood of Teamsters. Currently, District Council 4 has two affiliated local unions, Local 568M and 219M GCC/IBT.

22. In addition to overseeing the business of Local 458M, as a result of District Council 4's formation in October 2006, District Council 4 exercises control over all assets that previously belonged to its founding local unions, including Defendant Local 458M.

23. Defendant International is governed by its Constitution and By-Laws and its Executive Board. Defendant International oversees its business and the business of District Council 4 and Local 458M. A copy of International's Constitution and By-Laws is attached here as Exhibit D.

24. From October 28, 2013, through May 13, 2015, Defendant International, through its Graphic Communications Conference Division, placed both District Council 4 and Local 458M into emergency trusteeship. During the term of the trusteeship, Defendant International took actions related to the allegations at issue herein.

25. Defendant International stripped District Council 4 and Local 458M of their power to hold all or any parts of books, records, papers, funds, and any property, all of which were to have been administered exclusively for the benefit of and in the interest of their members.

26. The emergency trusteeship imposed by Defendant International also stripped District Council 4 and Local 458M of their power to supervise and administer its affairs and business and to exercise any other or further powers as authorized by the Constitution and By-laws of the International.

27.     International terminated its trusteeship of District Council 4 and Local 458M on May 13, 2015.   A copy of the termination of trusteeship is attached here as Exhibit E.

## FACTS

### A.     Membership in the Fund

28.     The Fund is comprised of "Participating Local" unions that have expressly adopted the Fund in accordance with the terms of the Trust Indenture.

29.     Article I(c) of the Trust Indenture defines a "Participating Local" in part, as a local which has duly approved, ratified and adopted the Fund on behalf of its members.

30.     Local 458M, voted to participate in the Fund and became a Participating Local of the Fund as defined in Article I(c) of the Trust Indenture.

31.     The Trust Indenture mandates that every member of a Participating Local shall upon making contributions to the Fund, become a member and maintain membership by making regular contributions.

Article III, Sec. 1(a) of the Trust Indenture provides:

"Every member of a Participating Local who is engaged in the industry in any category with respect to which the Local has become a Participating Local, shall, upon making contributions to this Pension Fund as herein provided, become a member of this Pension Fund and shall maintain membership by duly and regularly making contributions in such manner as is determined by the Trustees."
See Exhibit A, p. 43.

32.     The Trust Indenture also acknowledges that the Participating Local's By-Laws compel membership in the Fund.  The Summary Plan Description portion of the Trust Indenture provides:

"Once a proper group has voted to participate in the Fund, and has been approved by the trustees, all eligible members of that group are required by the terms of the By-Laws of the Local Union to become and remain participants in the Fund."  (Emphasis Added).
(See Exhibit A, p. 10).

33.     Local 458M,'s By-Laws complied with the terms of the Trust Indenture, because the By-Laws required all Local 458M members to become and remain participants in the Fund.

34.     Article 14.2(b) of Local 458M's By-Laws expressly requires that all members are required to become participating members of the Pension Fund.

Article 14.2(b) states as follows:

"All members of the Local, except general worker members, and members outside the trade are required to become participating members of the Pension Fund. General Worker members associated with the Industry, may become participating members of the pension fund if they so elect within 3 months from date of initiation." (Emphasis Added) (See Exhibit B, p. 19).

35.     Plaintiffs participation in the Fund was compulsory under Article 14.2(b) of Local 458M's By-Laws. Plaintiff's compelled participation in the Fund was also mandated by the Summary Plan Description portion of the Trust Indenture that acknowledged all members of a group that voted to participate in the Fund must become and remain participants in the Fund. Additionally, Plaintiffs were compelled as members of Local 458M, upon making contributions to the Fund to become and remain participating members of the Fund, according to the terms of Article III, Sec. 1(a) of the Trust Indenture.

**B.     Provisions detailing contributions to the Fund**

36.     The provisions for contributions to the Fund are detailed in Article IV of the Trust Indenture. (See Exhibit A, p.45).

37.     Article IV, Sec. 1(a), (b) and (c) of the Trust Indenture reads as follows:

"(a) Each member shall contribute hereto, in such manner as is determined by the Trustees, for each week or any part thereof for which the member receives wages or salary from the industry, an amount to be determined in accordance with either (b) or (c) of this Section…"

"(b) Unless the member's Participating Local has fixed a higher contribution in accordance with (c) of this Section, the member shall contribute $5.00 each week."

8

"(c) Any Participating Local may, by official action of its membership, and upon prior approval of the Trustees of the Inter-Local Pension Fund, determine that the contribution of its members shall be greater than the amount specified in (b) above, providing that the formula for such greater contribution shall apply to all participating members of the Local." (Emphasis added). See Exhibit A, p. 45.

38.     According to Article IV, Sec 1(b) of the Trust Indenture, a participating member's minimum contribution to the Fund was established at $5.00 a week. According to Article IV, Sec. 1(c), this amount could not be increased absent official action of the participating local and prior approval of the Trustees, provided that the newly approved greater contribution must then be applied to all participating members of the local.

**C.     The History of Local 458M's contributions to the Fund**

39.     On or about January 1, 2008, Local 458M voted to increase its existing contribution rate from 6% to 8% of its members' gross weekly wages.

40.     This increase in contribution rate was then expressed in the agreements made and entered into by and between Local 458M and the Press and Bindery Departments for Plaintiffs' employer, Bell Litho, Inc., that remained in full force and effect from February 3, 2013 to close of business on February 2, 2016. A copy of the Agreements are attached herein as Group Exhibit F.

**D.     The Fund's declining health**

41.     On or about January 2014, the Fund provided its participants notice that "…there is not enough money in our Fund to pay benefits over the long term" and that "…our Fund may run out of money in 9 years and be unable to pay benefits at all." The notice sought to facilitate a membership vote to cut benefits and increase contribution rates. A copy of the FAQ page attached to the notice is attached hereto as Exhibit G.

E. **Communications with the Union (Local 458M, District Council 4, and the International)**

42.     On or about April 2, 2014, Plaintiffs were employed by Bell Litho Inc., and the terms of their employment were memorialized in a contract, between Bell Litho Inc. and Local 458M.  (See Group Exhibit F).

43.     On or about April 2014, Plaintiff Bator was acting as a union steward for Local 458M.  Plaintiffs' compelled participation in the Fund coupled with the uncertainty and financial status of the Fund, caused Plaintiffs, and their co-workers, to present a petition to Local 458M leadership demanding that their contribution rate into the Fund be reduced to $5.00 per week, per Article IV, Sec. 1(b) of the Trust Indenture.

44.     On April 3, 2014, Paul Mancillas ("Mancillas"), President of District Council 4, informed Plaintiff Bator via letter that their petition was denied.  Mancillas' letter stated that: "After reviewing the petition … the Board decided that the contribution rate is set by the membership *per the contract language* that both attorneys corroborated."  The letter also provided, "Individual shops cannot change the contribution *unless there is language in their contract that allows this*".  A copy of the April 3, 2014 letter from Mancillas is attached hereto as Exhibit H.

45.     After expiration of the agreement/contract between Bell Litho and Local 458M, Plaintiffs insisted the contract language change regarding contribution rates.  The Defendant Union, despite Mancillas' letter of April 3, 2014, (Exhibit H), refused to change the contract language regarding contribution rates.  At that time, Plaintiffs had preliminarily agreed on all terms to renew their contract between Bell Litho and Local 458M, excepting the language regarding the Fund contribution rates.

46.     After a request by Plaintiff Bator to discontinue wage deductions from Plaintiffs'
paychecks as a result of Local 458M and District Council 4's refusal to change the language
regarding contribution rates in the contract, on February 9, 2016, Mancillas, as President of
District Council 4 sent Plaintiff Moses a letter that stated, "…you are still required to make your
payments on a timely basis.  If you fall behind, you will be found delinquent and can be expelled
from membership which can have an effect on your employment status.  We would also like to
point out that the 8% Inter Local Pension Contribution is still required.  If you fall behind or
contribute less you will be called in front of the Executive Board of Local 458M to explain.  This
can also affect your employment status."   A copy of the February 9, 2016 letter from Mancillas
is attached here as Exhibit I.

47.     Plaintiff Bator received a letter dated February 17, 2016, from the Executive
Board of Local 458M that reiterated Local 458M's By-laws, specifically, Article 14.2(b) which
mandates that "all members of the Local…are required to become participating members of the
Pension Fund."  Additionally, the letter admitted that the Union was aware that Local 458M
members in certain shops were not participating in the Fund as required by Local 458M's By-
Laws.  The letter provided in part:

> "… these shops came into Local 458M from another Local when they merged with us and
> had never participated in the Fund previously.  We have attempted to bring them in but
> due to industry conditions and the absence of real wage increases in most of these small
> shops it has not been something they have wanted to do.  Again though, we need to point
> out that these members have never been a participant in the Fund."

A copy of the February 17, 2016 letter is attached hereto as Exhibit J.

48.     On information and belief, no merger was ever voted upon or took place which
included members who were deemed exempt or excluded from complying with Local 458M By-
Laws.

49.     Local 458M By-Laws do not set forth an exemption or inclusion for any 458M members "merged" or otherwise, except for general workers and members outside the trade.

50.     On February 23, 2016, Plaintiff Bator wrote a letter to Local 458M requesting documents, meeting minutes, and information that supports their position that active members that are "merged with us" are exempt from complying with the By-Laws as to participation in the Fund. Local 458M responded in a letter dated March 31, 2016, where they refused to provide and disclose the requested documents and information.  The letter cited language from the Trust Indenture and concluded that the Trust Indenture allows "Locals to participate in the Pension Fund in 'segments' and the Local 458M bargaining units that you have identified, all of which have merged into the Local, belong to such segments".  A copy of the February 23, 2016 and response of March 31, 2016 are attached hereto as Group Exhibit K.

51.     Local 458M By-Laws do not set forth an exemption or exclusion for any 458M members, "segmented" or otherwise, except for general workers and members outside the trade.

52.     In an effort to exhaust all Union remedies, as provided for in Section 12.2 of the District Council 4's Constitution, (See Exhibit C), Plaintiffs appealed Local 458M's and District Council 4's denial of their requested reduction or modification of Fund contributions to George Tedeschi, President of the Graphic Communications Conference of the International Brotherhood of Teamsters via a letter dated March 2, 2016. Plaintiffs received no response and on September 22, 2016, Plaintiffs forwarded a follow-up letter requesting a response, but no response was ever received by Plaintiffs with respect to their appeal.  A copy of the March 2, 2016 letter and the September 22, 2016 follow up letter are attached there as Group Exhibit L.

53.     On June 15, 2016, Plaintiffs and their co-workers received a letter from Mancillas stating that it had been over 4 months since the contracts at Bell Litho had expired and Local 458M

leadership had no clear direction on what the members wanted to do.  The letter informed Plaintiffs that their employer would be unable to print the "union bug" on any work being done.   Plaintiff Bator responded on June 28, 2016, with a letter that outlined the employees' direction regarding their contract and advising Mancillas that the Plaintiffs and employees had not received any response regarding the appeal of their contribution rate.  On July 11, 2016, Local 458M's Executive Board replied in a letter that did not answer Plaintiff Bator's questions but, rather simply stated the leadership wanted to move forward in finalizing a contract.   Plaintiff Bator replied by letter dated July 21, 2016, expressing Plaintiffs desire to move forward in finalizing a contract after they receive a response to their appeal.  Copies of the June 15, 2016, June 23, 2016, July 11, 2016 and July 21, 2016 letters regarding renewal of Plaintiffs' contracts are attached hereto as Group Exhibit M.

54.     On November 7, 2016, Mancillas sent a letter addressed to all Local 458M members employed at Bell Litho, which included Plaintiffs.  The letter admitted that the contribution rate to the Fund was set by Local 458M membership and could not be changed without the membership's approval despite numerous attempts made by Plaintiff Bator as union steward.  The letter stated that Local 458M disclaimed interest in their local bargaining units at Bell Litho.  The letter further stated that all of the Local 458 members employed at Bell Litho were no longer governed by any collective bargaining agreement between Local 458M and Bell Litho and that their contributions to the Fund would be vested, causing Plaintiffs to lose all benefits afforded to active participants.  A copy of the November 7, 2016 letter is attached hereto as Exhibit N.

55.     As a result of the Union's actions set forth in Mancillas' letter of November 7, 2016, Plaintiffs lost their Union membership and the benefits associated therewith; they no longer had a voice or voting privileges on decisions affecting the Fund and their investments; they lost access to their money invested in the Fund; they lost benefits from the Fund which were

previously available to them, including but not limited to withdrawal at the age of 59, a disability benefit, and a death benefit, among others; and certain Bell Litho employees, including Plaintiff Jimenez, immediately lost health insurance benefits, without notice, and were not offered COBRA coverage.

### F. Communications with the Fund

56.     At various times in 2016, Mancillas served as Local 458M's President, District Council 4's Secretary/Treasurer, and as a Defendant Trustee of the Fund.

57.     Although Plaintiffs had not apprised Trustees of their contract dispute, on January 20, 2016, Lawrence C. Mitchell ("Mitchell"), the Executive Director of the Fund, sent a letter to Plaintiffs and their co-workers at Bell Litho, outlining the requirement of participants in the Fund to continue participation, and the resulting consequences if Plaintiffs elected to discontinue participation or decrease their contributions.  The letter stated, in part, that "The General Counsel of the National Labor Relations Board has ruled that a GCC (Graphics Communications Conference) union member who withdraws from the Fund while continuing to work within the jurisdiction of the Fund can be denied his or her rights to participate as a full union member if the local union constitution requires all members to be contributors to the Fund." (emphasis added).

58.     Subsequently, Plaintiffs requested that the Fund provide a copy of the "ruling" by the General Counsel of the National Labor Relations Board ("NLRB") referenced by Mitchell in his January 20, 2016 letter.  Mitchell agreed to provide Plaintiffs with a copy of the "ruling" but Plaintiffs never received a copy.   However, after making an inquiry with the NLRB for a copy of the ruling, Plaintiffs received an email response from Matt Parsons, Information Officer at the NLRB, on August 30, 2016 which stated, "The General Counsel does not rule, the Board rules. At most, the Division of Advice under the General Counsel could have issued an opinion, but this

is not Board law or an administrative rule." A copy of the January 20, 2016 letter and the August 30, 2016 NLRB email response is attached hereto as Group Exhibit O.

59.     On March 7, 2016, Plaintiffs forwarded a letter to Defendant Trustees in response to Lawrence Mitchell's January 20, 2016 letter, requesting that the Fund become compliant with the terms of the Trust Indenture, specifically Article IV, Sec. 1(a)(b) and (c) and the Summary Plan Description portion that provides all eligible members of a participating group which Local 458M is, are required by the terms of the By-Laws of their local union to become and remain participants in the Fund and that "…providing that the formula for such greater contributions shall apply to all participating members of the Local." The letter also stated that Plaintiff Bator was informed by Mancillas, Local 458M President that Mancillas had turned over a formal letter Bator wrote to Local 458M to the Fund's attorneys. The letter outlined Plaintiff Bator's concern that this action raised the appearance of Local 458M and the Fund acting in concert as to his internal complaint against Local 458M. A copy of the March 7, 2016 letter is attached hereto as Exhibit P.

60.     Pursuant to an email from Mancillas of August 29, 2016 to Plaintiff Bator, a meeting was set for September 12, 2016, to bring Larry Mitchell, Executive Director of the Fund to Bell Litho to answer any questions by members and to give an update on the Fund's current financial health. Plaintiff Bator confirmed the date and time of the meeting and responded that Mitchell should be prepared to respond to Plaintiffs' March 7, 2016 letter to the Fund. (Exhibit P). A copy of the email exchange setting and confirming the September 12, 2016 meeting and Plaintiffs' expectation that Mitchell should be prepared to respond to Plaintiffs' March 7, 2016 letter is attached here as Exhibit Q.

### G. September 12, 2016 Meeting With Executive Director of Fund

61.     On September 12, 2016, Mancillas and Michael Consolino, Union Representative, and Larry Mitchell, Executive Director of the Fund attended a meeting with Plaintiff and several of their coworkers at Bell Litho.

62.     With the acknowledgment of all present the meeting was recorded.

63.     Mitchell advised Plaintiffs that as of that date, the Fund had $293 million in assets, had a funding ratio of 71.1%, had 18,000 retirees and 6500 active participants. The Fund Summary Annual Report for year ending June 30, 2016, three months prior to the September 12th meeting stated that the Fund had $901,359,512.00 in plan assets. A copy of the Annual Report is attached hereto as Exhibit R.

64.     Mitchell stated the Fund was paying out $132 Million in pension benefits per year and taking in $16 million in contributions.

65.     Mitchell stated that the long term solvency of the Fund, if there are no new participants, no more increases or decreases, based on the current 71% funding ratio would be 23 years.

66.     Mitchell admitted the Fund was not fully funded, but denied that the Fund was in critical status.

67.     Mitchell was unable to answer questions about, how many Local 458M participants were contributing less than the voted upon 8% contribution rate or not at all, as required by the By-Laws and the Trust Indenture or how many of the 69 participating local unions participated on a mandatory basis like Local 458M.

68.     When asked how the contribution rate was determined for participants who do not participate on a mandatory basis, Mitchell replied that the contribution rate is determined by a

local union's by-laws. Mitchell stated the median contribution rate was $48.00. However, the 8% contribution rate voted upon by Local 458M membership far exceeds the $48.00 median contribution rate.

69.    Mitchell could not answer questions about how many participants had reduced or stopped paying their contribution rates and if they had lost their active union status. Mitchell stated that those questions were issues for the local unions.

70.    Plaintiffs again requested a copy of the "ruling" Mitchell referenced in his January 20, 2016 letter, but Mitchell did not provide a copy.

71.    Mitchell was asked how the Fund enforced the terms of its Trust Indenture with respect to contributions, and Mitchell stated that the Fund does not monitor or police the local unions, that the Fund receives a list of participants and contribution rates from the Union and they take the Union's word for it that all who are required to participate are doing so at the required rate.

### H.  Current state of contributions to the Fund

72.    On or about July 2017, the Fund and the Union provided notice to Union member participants stating that the Fund was projected to run out of money in seven (7) years. A copy of the 2017 Notice is attached here as Exhibit S.

73.    Mitchell misrepresented the funding level of the Fund at the September 2016 meeting when he stated that the Fund was currently funded at a rate of 71%, because the July 2017 Notice states that the actual funding rate in 2015 was 66% and in July 2017 the funding rate was 58%.

74.    There are three additional categories related to Fund contributions involving active Local 458M members: 1) those that are not compelled or required to participate and

contribute in the Fund; 2) those that have optional participation in the Fund; and 3) those that participate at a rate below the mandated 8% contribution rate that was voted upon by Local 458M membership on or about January 1, 2008.

75.     Upon information and belief, out of approximately 950 active Local 458M members, approximately one-third of active Local 458M members belong to one of the three categories listed in the preceding paragraph.

76.     Upon information and belief, Local 458M members who are, or were non-participating members in the Fund have, or had, various employers, including, The Chicago Tribune, Dahlstrom Display, Cold Fast Print of Ottawa, Northshore Printer, Printing Craftsmen of Joliet and Printing Specialties.

77.     Upon information and belief, as recently as March, 2016, Local 458M members employed by Aurora Fast Print were initially only required to make contributions to the Fund in the amount of $10.00 per pay period. This amount was subsequently increased to 5% of their gross weekly wages, however, both of these contribution amounts are impermissibly below the mandated 8% contribution rate that was voted upon by Local 458M membership on or about January 1, 2008.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of themselves and classes of similarly situated persons from 2008 through the date of final judgment herein as follows:

(A)     Any and all members of the Defendant Union who are participating members in the Fund and were subject to wage deductions for Fund contributions due to the Union's selective enforcement of their uniform By-Laws requiring that all members participate in the Fund and contribute at the rate voted upon by membership; and

18

(B)     Any and all Fund participants who were subjected to the underfunding of the Fund, with respect to the Trustees' failure to enforce their Trust Indenture requiring that fixed contribution rates apply to all participating members of the Fund, and that all eligible members of a group are required by the terms of their Local Union's By-Laws to become and remain participants in the Fund.

79.     The members of the class are numerous and joinder of all Union members and Fund participants is impracticable. Based on the number of members and participants who were subject to violations of the By-Laws and Trust Indenture, were subject to compelled wage deductions for Fund contributions, and subject to the underfunding of the Fund, it is likely that the class comprises hundreds of members and the exact number of class members can be determined from records maintained by the Defendants.

80.     Common questions of law and fact exist as to the class and predominate over questions, if any, affecting individual Class members, including, but not limited to:

A.     Whether the Defendants breached their fiduciary duties;

B.     Whether the Defendants breached their contract with Plaintiffs and the Class;

C.     Whether the Defendants committed fraud;

D.     Whether the Plaintiff and the Class have suffered damages as a result of the Union's selective enforcement of Local 458M's By-Laws and the Trustees' violation of the Trust Indenture;

E.     Whether Plaintiff and Class are entitled to equitable relief, including but not limited to compensatory damages.

81.     Plaintiffs will fairly and adequately protect the interests of the members of the class. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiffs have no interest adverse to any member of the class. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the Class.

82.     A class action is an appropriate method for the fair and efficient adjudication of this controversy because it involves a uniform course of conduct equally applicable to Plaintiffs and the Class. A class action can therefore best secure the economies of time, effort and expense or accomplish the other ends of equity and justice that this action seeks to obtain.

83.     A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiffs' and the Class members' claims.

84.     Based upon the facts and circumstances alleged herein, the class is identifiable, ascertainable and manageable.

<u>COUNT I</u>
**Breach of Fiduciary Duty - 29 U.S.C. §1132(a)(2) and (3)**
**(Defendant Trustees)**

85.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

86.     Defendant Trustees is named as a fiduciary of the Fund in the Trust Indenture, and Defendant Trustees also possesses and exercises, the authority to control and manage the operation and administration of the Fund.

87.     As a fiduciary, Defendant Trustees must discharge its duties with respect to the Fund solely in the interest of, and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in accordance with the documents and instruments governing the Fund.

88.     Defendant Trustees failed to discharge its duties to the Fund solely in the interest of its participants and for the exclusive purpose of providing benefits to participants and their

20

beneficiaries, by failing to exercise care, and failing to skillfully and diligently engage in a prudent process for evaluating and monitoring contributions to the Fund by its participating local unions, causing the Fund to become, and remain, underfunded.

89.     Defendant Trustees failed to discharge its duties to the Fund solely in the interest of its participants and for the exclusive purpose of providing benefits to participants and their beneficiaries by failing to act in accordance with the documents governing the Fund. Specifically, Defendant Trustees failed to enforce the terms within the Summary Plan Description portion of the Trust Indenture that stated all members of a group that voted to participate in the Fund must become and remain participants in the Fund.  Further, Defendant Trustees failed to enforce the terms contained in Article IV, Sec 1(c) of the Trust Indenture, which provided that any participating local union that determined by official action of its membership, with the prior approval of the Defendant Trustees, that its members' contributions should be set higher than $5.00 a week shall apply that formula to ALL participating members of the local union.  (emphasis added).

90.     Defendant Trustees' failure to discharge its fiduciary duties to the Fund has caused the Fund to be underfunded and caused Plaintiffs and the Class to suffer unknown economic loss in the form of sustained damages including, but not limited to:  a) excessive wage deductions for Fund contributions inconsistent with other participating local union members; b) reductions in future Fund benefits; and c) decreased value of Plaintiffs' and the Class' investment in the Fund. Plaintiffs and the Class' total loss will be determined after complete discovery in this case and are continuing.

91.     Defendant Trustees is personally liable under 29 U.S.C. §1109(a) to make good to the Fund any losses to the Fund resulting from the breaches of fiduciary duty alleged in this

Count and is subject to other equitable relief as appropriate, including but not limited to, compensatory damages.

## COUNT II
**Breach of Fiduciary Duty - 29 U.S.C. §1132(a)(2) and (3)**
**(Defendant Union)**

92.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

93.     Defendants Local 458M and District Council 4 are a fiduciary of the Fund because they manage the operation of the Fund through its By-Laws, as acknowledged by the Summary Plan Description portion of the Trust Indenture.  Defendant International acted as a fiduciary of the Fund because it managed the operation of the Fund through Local 458M's By-Laws, during the emergency trusteeship that lasted from October 28, 2013 until May 13, 2015.  Through selective enforcement of its By-Laws, Defendant Union exerts control over the amount of revenue that is, or is not, contributed to the Fund.   Through this selective enforcement of its By-Laws, Defendant Union directly manages and exerts control over the amount of revenue, i.e. plan assets that are used to finance the Fund.

94.     Specifically, Plaintiffs, as participants in the Fund, had their contributions withheld from their wages by their employer through Defendant Union's enforcement of Defendant Local 458M's By-Laws.  Plaintiffs' withheld contributions were "plan assets" as defined under 29 C.F.R. 2510.3-102(a)(1), which applies to ERISA, Title 29 U.S.C., §§1001-1003.   Local 458M members employed by Aurora Fast Print; among others, were required under the By-Laws to make contributions at the same mandated 8% contribution rate as Plaintiffs, but Defendant Union as a result of its improper selective enforcement of its By-Laws failed to collect the required 8% contribution rate.

95.     As a fiduciary, Defendant Union  must discharge its duties with respect to the Fund

solely in the interest of, and for the exclusive purpose of providing benefits to participants and their

beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent man acting in a like capacity and familiar with such matters would use in the

conduct of an enterprise of a like character and with like aims, and in accordance with the

documents and instruments governing the Fund.

96.     Defendant Union failed to discharge its duties to the Fund solely in the interest of

its participants and for the exclusive purpose of providing benefits to participants and their

beneficiaries, by selectively enforcing Local 458M's By-Laws and by failing to skillfully and

diligently engage in a prudent process related to financing the Fund.  Defendant Union exerted

control over plan assets by improperly limiting the amount of revenue that was to be paid to the

Fund in the form of member contributions.

97.     Defendant Union failed to act in accordance with the documents governing the

Fund.  Defendant Union selectively enforced Article 14.2(b) of Local 458M's By-Laws which

expressly requires that all members are required to become participating members of the Fund and

Defendant Union failed to comply with and enforce the terms within the Summary Plan

Description that required all eligible members of a participating local union to become and remain

participants in the Fund.

98.     Defendant Union's failure to discharge its fiduciary duties to the Fund has caused

the Fund to be underfunded and caused Plaintiffs and the Class to suffer unknown economic loss in

the form of sustained damages including, but not limited to:  a) excessive wage deductions for

Fund contributions inconsistent with other participating local union members; b) reductions and/or

loss of future Fund benefits; and c) decreased value of Plaintiffs' and the Class' investment in the

Fund. Plaintiffs and the Class' total loss will be determined after complete discovery in this case and are continuing.

99.     Defendant Union is personally liable under 29 U.S.C. §1109(a) to make good to the Fund any losses to the Fund resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable relief as appropriate.

<u>**PRAYER FOR RELIEF - COUNTS I and II**</u>

Plaintiffs, on behalf of themselves and all others similarly situated pray that the Court:

A.      Find and declare that the Defendants have breached their fiduciary duties as described herein;

B.      Find and adjudge that the Defendants are personally liable to make good to the Fund all losses to the Fund resulting from the breach of fiduciary duties;

C.      Determine the method by which the Fund losses under 29 U.S.C. §1109(a) should be calculated;

D.      Order Defendants to provide all accountings necessary to determine the amounts Defendant must make good to the Fund under 29 U.S.C. §1109(a);

E.      Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

F.      Certify the Class and appoint Plaintiffs as Class Representatives and Plaintiffs' counsel, Larry D. Drury as lead class counsel;

G.      Award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

H.      Order the payment of interest to the extent it is allowed by law;

I.      Award compensatory damages to the Plaintiffs;

J.      And for such other relief as the Court deems appropriate.

## COUNT III
### Breach of Contract – State law claim
### (Defendant Union)

100.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

101.    The terms and conditions set forth in Defendant Local 458M's By-Laws form a valid and enforceable contract between Defendant Local 458M and Plaintiffs and the Class.

102.    Plaintiffs and the Class performed under the terms of the contract, specifically Article 14.2(b) of Local 458M's By-Laws, by becoming and remaining participating members of the Fund.

103.    Defendant Union breached its contract and covenant of good faith and fair dealing with the Plaintiffs and the Class in that they exercised selective enforcement of Article 14.2(b) of the By-Laws by not enforcing its express requirement that all Local 458M members become participating members of the Fund, and that all members contribute at the rate voted upon by membership.

104.    At all times relevant hereto, Defendant Union was aware of its breach of its By-Laws.

105.    As a result of Defendant Union's breach, Plaintiffs and the Class have sustained damages and loss including, but not limited to:  a) excessive wage deductions for Fund contributions inconsistent with other participating local union members; b) reductions in future Fund benefits; and c) decreased value of Plaintiffs' and the Class' investment in the Fund.

**COUNT IV**
**Common Law Fraud – State law claim**
**(Defendant Union)**

106.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

107.     Defendant Union made misrepresentations and omissions of fact material in concealing the fact that they selectively enforced their By-Laws and that not all Union members were participating members in the Fund, had optional participation, and/or were not participating at the 8% voted upon contribution rate.

108.     Defendant Union knew at the time it misled Plaintiffs and the Class that they were required to pay an 8% contribution rate, that the Union selectively enforced its By-laws that required such contributions.

109.     Defendant knew at the time it sent Plaintiffs the February 9, 2016 letter (See Exhibit I), which stated that Plaintiffs were required to make their contributions, demanded continuation of the 8% contribution and threatened expulsion and consequences for non-payment or reduction of same, that Defendant selectively enforced its By-laws and allowed other members to either not participate, optionally participate, or participate at a rate less than the voted upon 8% contribution rate.

110.     Defendant Union knew at the time it sent Plaintiffs its March 31, 2016 letter (See Exhibit K), and February 17, 2016 letter (See Exhibit J), that there was no "merger" that took place or was voted upon that excluded, or made members exempt from Local 458M By-Laws.

111.    Defendant Union knew that as a result of the Union's selective enforcement of its By-Laws, the Fund was being underfunded and Defendant Union failed to disclose this fact and continued to ask membership for increased contribution rates and reductions in benefits.

112.    Defendant Union knew at the time it sent its November 7, 2016, letter expelling Plaintiffs from the Union, (Exhibit N), that the Union selectively enforced its By-Laws and allowed other members to either not participate, optionally participate, or participate at a rate less than the voted upon 8% contribution rate.

113.    At the time Defendant Union participated in a meeting in September, 2016 with Mitchell and Plaintiffs, Defendant Union knew or should have known that the Fund's long term solvency was not 23 years and was not at a funding ratio of 71.1% as represented by Mitchell, and was actually funded at 66% in 2015 and 58% in July, 2017. Further, Defendant Union knew or should have known that the Fund's assets were at $901,359,512 and not the $293 million represented by Mitchell.

114.    Defendant Union knew or should have known at the time Lawrence Mitchell sent the Fund's letter of January 20, 2016 (See Exhibit O) that the NLRB never made a "ruling" that a GCC (Graphics Communications Conference) union member who withdraws from the Fund while continuing to work within the jurisdiction of the Fund can be denied his or her rights to participate as a full union member if the local union constitution requires all members to be contributors to the Fund".

115.    Defendant Union was aware that Plaintiffs and the Class would rely on Defendant Union's misrepresentations and omissions, and such representations were material in Plaintiffs' and the Class' participation and contributions to the Fund.

27

116.    Plaintiffs and the Class reasonably relied upon Defendant Union's misrepresentations and omissions of material fact.

117.    As a direct and proximate result of Defendant Union's fraud, Plaintiffs and the Class have sustained damages and loss including, but not limited to:  a) reductions in future Fund benefits; b) decreased value of Plaintiffs' and the Class' investments in the Fund; c) loss of interest; d) loss of use of their money; e) loss of Union membership and the benefits associated therewith; f) loss of  benefits available to active Fund participants including but not limited to withdrawal at the age of 59, a disability benefit, and a death benefit, among others; and g) active status in the Fund.

## PRAYER FOR RELIEF - STATE LAW COUNTS III and IV

Plaintiffs, on behalf of themselves and all others similarly situated pray that the Court:

A.    Find that Defendant Union breached its contract with the Plaintiffs and the Class;

B.    Find that the Defendant Union committed fraud;

C.    Certify the Class and appoint Plaintiffs as Class Representatives and Plaintiffs' counsel, Larry D. Drury as lead class counsel;

D.    Award Plaintiffs and the Class damages including, but not limited to actual, compensatory and punitive damages;

E.    Award reasonable attorneys' fees and costs, and service awards for the Class Representatives.

F.    And for such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on the class action claims for all issues which are triable by a jury.

Respectfully submitted,

DONALD BATOR, individually and
on behalf of himself and all others
similarly situated,


By:  /s/ Larry D. Drury

LARRY D. DRURY
THOMAS M. REBHOLZ
LARRY D. DRURY, LTD.
100 North LaSalle Street
Suite 2200
Chicago, Illinois 60602
(312) 346-7950
Attorney No. 0681024
ldd@larrydrury.com