# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONALD BATOR, EDMOND W. MOSES, CHRISTOPHER O'MALLEY, MICHAEL ANTHONY PAPPA and ROGELIO JIMENEZ, JR. on behalf of themselves and all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> THE BOARD OF TRUSTEES OF THE INTER- LOCAL PENSION FUND of the Graphic Communications Conference of the International Brotherhood of Teamsters, LOCAL NO. 458-M GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, DISTRICT COUNCIL NO. 4 GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> Defendants. | No. 18 CV 01770 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, former members of a local union that participates in an employee benefits plan, allege that both the union and the pension plan board of trustees violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* by breaching their fiduciary duties to the plan. The defendants moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim. While the plaintiffs may properly invoke federal jurisdiction, they have failed to state a claim upon which relief can be granted, so the defendants' motions are granted.

## BACKGROUND

At issue here is the administration and alleged underfunding of the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters ("the Fund"), a defined benefit plan designed to provide retirement and other benefits to members of participating local unions. Compl. ¶ 15. Unlike most defined benefit plans, the Fund is not collectively bargained. Rather, it is organized as a trust described in § 501(c)(18) of the U.S. Internal Revenue Code. As such, it is completely employee funded—employers do not contribute or participate in Fund governance. *Id*. at Ex. A. The Fund is governed by a Trust Indenture and administered by a board of trustees (the "Fund Trustees" or "Trustees") consisting of officials from various participating unions. With respect to contribution levels, the Trust Indenture provides that members must contribute $5.00 per week unless the member's union has fixed a higher contribution amount through official action of its membership and with the approval of the Fund Trustees. *Id.* ¶ 37. Upon retirement, members are entitled to a monthly lifetime pension. The monthly pension amount is equal to 2% of the total amount a member contributes during their time as an employee. *Id.* at Ex. A, Trust Indenture 45, ECF No. 4.[1]

Named plaintiffs Donald Bator, Edmond Moses, Christopher O'Malley, Michael Anthony Pappa, and Rogelio Jimenez, Jr. are employees of Bell Litho Inc., a graphic communications company, and former members of Local No. 458M Graphic Communications International Union, a Fund participant.[2] Notably, Local 458M's bylaws require its members to become members of the Fund and contribute to the Fund. *Id*. ¶ 33.

---

[1] For example, if a member contributed $5.00 per week for 15 years (a total of $3,900), they would receive $78.00 per month upon retirement (a total of $18,720 if the member retired at age 65 and lived the normal average of 20 years). *Id.* at Ex. A.

[2] Local 458M is overseen by District Council 4, a named defendant in this case. District Council 4 is an entity that was created in 2006 when four unions came together to form a unified

The story begins for purposes of this motion in 2008, when Local 458M voted to increase its existing Fund contribution rate from 6% to 8% of its members' gross weekly wages.[3] *Id*. ¶ 39. The increase was memorialized in a contract between Bell Litho employees and Local 458M. Several years later in January 2014, the Fund notified participants that its financial health was deteriorating and sought to facilitate a membership vote to cut benefits and increase contribution rates. *Id*. ¶ 40. The plaintiffs and their co-workers, faced with the Fund's uncertain financial status and their compelled participation in the Fund, petitioned Local 458M leadership to reduce their contribution rate. Local 458M denied the petition, noting that "individual shops cannot change the contribution unless there is language in their contract that allows this." *Id*. ¶ 44.

When the contract between Bell Litho and Local 458M expired in 2016, the plaintiffs and their co-workers tentatively agreed to renew its terms excepting the language regarding Fund contribution rates. Local 458M refused to change the language regarding contribution rates, so the plaintiffs requested that wage deductions from their paychecks be discontinued. Local 458M responded via letter in February 2016, noting that the plaintiffs were required to make their contributions and that failure to do so could result in expulsion from the union. *Id*. ¶ 46. In a separate letter, it noted that Local 458M's by-laws required all its members to become members of the Fund. It also admitted, however, that certain Local 458M members working for employers other than Bell Litho, who had been brought in when Local 458M merged with a different union, were *not* participating in the Fund. *Id*. ¶¶ 46, 47. According to the Union, the Fund's Trust

---

labor organization. *Id.* at ¶ 20. For clarity, Local 458M and District Council 4 are referred to collectively as "Local 458M" or "the Union."

[3] The agreement, attached to the complaint as Exhibit F, suggests that the increase applied to Bell Litho's Press Department and Bell Litho's Bindery Department; it is unclear from the face of the complaint whether the increase applied to union members outside those two departments.

3

Indenture allows locals to participate in "segments" and the non-participating members who had been brought in pursuant to the merger belonged to such segments. *Id*. ¶ 50.

By June 2016, contract negotiations between the Bell Litho employees and Local 458M had come to a standstill. In September 2016, the plaintiffs and other Bell Litho employees met with Fund Executive Director Larry Mitchell, who was unable to answer questions regarding the number of Local 458M members who contributed less than the voted upon 8% contribution rate. *Id*. ¶ 67. Mitchell stated that the Fund did not monitor or police the local unions; rather, it received a list of participants and contribution rates from the unions and took the unions at their word that all who were required to participate were doing so at the required rate. *Id*. ¶ 71.

In November 2016, the President of Local 458M sent a letter to all Local 458M members employed by Bell Litho. The letter stated that Fund contribution levels were set by Local 458M membership and could not be changed without membership approval, and that the Bell Litho shop steward had failed in his attempts to have the Local 458M membership authorize a vote. It went on to explain that Local 458 members employed at Bell Litho would no longer be governed by any collective bargaining agreements and that their contributions to the Fund would become vested. *Id.* at Ex. N. According to the Trust Indenture, a member entitled to a vested benefit may not make further contributions to the Fund and is eligible for benefits upon retirement at the rate which was in effect at the time of termination of active membership. *Id.* at Ex. A, Trust Indenture 50.

The plaintiffs subsequently filed a putative class action suit in this district. In Count I, the plaintiffs allege that the Fund Trustees breached their fiduciary duties in violation of ERISA by failing to enforce terms of the Trust Indenture which required local unions to apply the same contribution rate formula to all participating union members and causing the Fund to become underfunded. In Count II, the plaintiffs allege that Local 458M breached its fiduciary duties in

4

violation of ERISA by selectively enforcing its bylaws. Counts III and IV allege state law breach of contract and common law fraud theories against Local 458M. Both the Fund Trustees and the Union filed motions to dismiss for failure to state a claim; the Trustees also argue that the Court lacks subject matter jurisdiction to hear the claim asserted in Count I.

## DISCUSSION

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the complaint fails to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When considering a Rule 12(b)(6) motion, courts must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The standard is the same for a motion to dismiss for lack of Article III standing—a complaint must allege facts which plausibly support the invocation of subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009)).

### I. Count I: Fund Trustees

The Fund Trustees argue in their motion to dismiss that the plaintiffs failed to allege a plausible violation of ERISA and failed to demonstrate Article III standing. Because constitutional standing to sue is a threshold jurisdictional question, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), the Court addresses that issue first.

#### A. Article III Standing

To establish standing to sue under Article III of the U.S. Constitution, plaintiffs must establish that 1) they have suffered a concrete and particularized injury-in-fact, 2) the injury is traceable to the challenged action of the defendant, and 3) the injury is likely to be redressed by a

favorable judicial decision. *Gaylor v. Mnuchin*, 919 F.3d 420, 425 (7th Cir. 2019). Here, the plaintiffs allege that the Trustees' breach of fiduciary duty caused the plan to become underfunded resulting in "unknown economic loss" to the plaintiffs in the form of reductions in future benefits. Compl. ¶ 90. As discussed below, other allegations in the complaint plausibly suggest that the Fund may become unable to pay future benefits at all. That is sufficient to satisfy the plaintiffs' burden at this juncture.

The Trustees argue that the complaint alleges only that they failed to properly collect contributions and that such an allegation, "given the discretion accorded the Trustees in such matters," is insufficient to establish a particularized injury. *See* Mem. Supp. Def. Board of Trustees' Mot. Dismiss 15, ECF No. 28. In support, they cite to *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 134 F. Supp. 2d 1, 18 (D.D.C. 2000) *aff'd*, 286 F.3d 598 (D.C. Cir. 2002) and *Fox v. McCormick*, 20 F. Supp. 3d 133, 136 (D.D.C. 2013). The cited portion of *Hartline*, however, discusses only whether the plaintiffs stated a claim; the opinion does not discuss Article III standing and is therefore inapposite to this discussion.[4]

*Fox* is on point but distinguishable. There, the court reasoned that defined benefit plan participants can sue trustees for their failure to collect contributions only when faced with the risk of non-payment of their pensions, *e.g.* "when trustees' dereliction threatens the financial stability of a plan," or when the participants specifically retain a reversionary interest in excess contributions. 20 F. Supp. 3d at 140. That conclusion flowed from the Supreme Court's holding

---

[4] The *Hartline* court discusses standing only in the context of whether ERISA itself allows plan participants to sue an employer directly to require the employer to make contributions to a pension plan, or whether they must bring the claim as a derivative action on behalf of a fund and therefore comply with the demand requirements set forth in Federal Rule of Civil Procedure 23.1. 134 F. Supp. 2d at 20. The question of statutory standing, as opposed to constitutional standing, has not been raised by the parties and is not at issue here.

6

that defined benefit pension plan participants generally have an interest only in their fixed future payments, not the assets of the pension fund generally. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999). Because the *Fox* plaintiffs did not allege that the trustees' failure to collect contributions materially increased the plan's risk of default, the court dismissed the claim for lack of Article III standing.

In contrast, the plaintiffs in this matter have included allegations in their complaint which, taken as true, plausibly suggest that the Trustees' actions (as well as the Union's) materially increased the risk that they might not receive their pensions.[5] For example, the plaintiffs allege that the Fund failed to properly monitor and collect contributions and that it subsequently notified participants that it was running out of money and that it may be "unable to pay benefits at all." Compl. ¶ 41. *See also id.* ¶ 64 (alleging that Fund Executive Director told participants that the Fund was paying out $132 million in pension benefits per year but taking in only $16 million in contributions). The Trustees respond by noting that the plaintiffs failed to allege the amount of contributions that the Fund would have received had the Trustees compelled all members to contribute at the same rate paid by the plaintiffs. Reply Mem. Supp. Def. Board of Trustees' Mot. Dismiss 8, ECF No. 54. But the plaintiffs cannot be expected to set forth an exact figure at this early stage in the litigation, and in any case, an "objectively reasonable likelihood" that financial loss will result provides standing to claim injury. *See, e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016) ("substantial" future risk of financial loss resulting from data breach held sufficient to provide standing) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). The plaintiffs have plausibly alleged an injury-in-fact (risk of denied benefits), that the injury is traceable to the defendants' alleged failure to enforce contribution levels, and that

---

[5] To be clear, whether their actions constitute a violation of ERISA is another matter.

7

a favorable judicial opinion would redress that injury by requiring the defendants to supplement Fund contribution levels. The plaintiffs therefore have Article III standing and may properly invoke federal jurisdiction.

**B. Breach of Fiduciary Duty Allegations**

The jurisdictional prerequisite satisfied, the Court turns next to whether the plaintiffs have stated a claim against the Trustees for breach of fiduciary duty under ERISA. To survive a motion to dismiss, a complaint alleging a breach of fiduciary duty must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). The plaintiffs allege that the Trustees breached their fiduciary duty by failing to diligently evaluate and monitor contributions to the Fund and failing to enforce the terms of the Trust Indenture. Section 404(a) of ERISA provides in relevant part that fiduciaries of pension plans must discharge their duties with reasonable care, skill, prudence, and diligence and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(B), (D). According to the plaintiffs, the Trust Indenture explicitly requires the Trustees to enforce uniform contribution rates among participating members. According to the Trustees, however, it explicitly permits different groups within the same union to contribute at different rates. At issue are three portions of the Trust Indenture: Article III, Article IV, and Article X. Article III, section 2 of the document provides under the subheading "Membership" that

> a Local may be a Participating Local with respect to one or more segments of its membership, ***or under separate conditions with respect to each of one or more such segments***, defined in terms of recognized industries including all occupations relating directly or indirectly to the industry or industries with respect to which the Local union became a Participating Local, as determined and approved by the Trustees.

(emphasis added). Article IV, section (c) provides under the subheading "Contributions" that

> *any group of participating members in a Participating Local* may, by official action of its membership, and upon prior approval of the Trustees of the Inter-Local Pension Fund, determine that the contributions of its members shall be greater than [the required $5.00 per week], providing that the formula for such greater contribution shall apply to *all participating members of the Local*.

(emphasis added). Finally, Article X, section 6 provides that the Trustees have discretionary authority to construe the terms of the Trust Indenture. Compl. Ex. A, Trust Indenture, ECF No. 4

The Seventh Circuit has explained that the federal common law of insurance contracts requires ERISA plans to be interpreted in "an ordinary and popular sense, as they would be understood by a person of average intelligence and experience." *Tran v. Minnesota Life Ins. Co.*, 922 F.3d 380, 382 (7th Cir. 2019) (internal citations omitted). Where the language of a plan "gives the employee adequate notice of the administrator's discretion to shape the application, interpretation, and content of the plan's rules," however, a plan administrator's interpretation is given deference unless it is arbitrary and capricious. *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009).

A plain reading of Article IV, standing alone, might suggest that when a group of participating members within a Participating Local increases its contribution level pursuant to official action of the group's membership, that formula must apply to *all* participating members of the Local regardless of whether they belong to the specific group that initiated the change. As the Trustees note, however, such an interpretation would allow discrete groups within a local to set contribution rates that apply to members of the same local participating in the Fund in other "groups" without their consent. Trustees' Reply Br. 3, ECF No. 54. That untoward result counsels against reading Article IV in isolation. That Article, as the Trustees further argue, should be read in conjunction with Article III, which permits different industry segments within a given local to become Fund participants under "separate conditions." From that perspective, one could

9

reasonably understand Article IV to mean that different segments of a local can increase their contribution levels so long as the formula applies to all of the members of that segment; in other words, a segment cannot decide to allow the members of that segment to contribute at varying rates.[6] That understanding is consistent with the Fund's Summary Plan Description, which provides that "[n]o individual member may contribute at a higher rate than other members in the same local *group*." Compl. Ex. A, Summary Plan Description 12, ECF No. 4 (emphasis added). Article IV, to be sure, "could be clearer," but the Trustees' interpretation is neither arbitrary nor capricious and is therefore entitled to deference. *See Estate of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 926 (7th Cir. 2018) (accepting plan administrator's interpretation of a plan where it was "compatible with the language and structure of the plan document."). Because the terms of the Trust Indenture are reasonably interpreted as permitting different pre-approved segments or groups within a union to contribute to the Fund at different levels, the Trustees cannot have breached their fiduciary duties merely by failing to require different segments within Local 458M to contribute at the same rate. To the extent the claim set forth in Count I is premised on that alleged failure, then, it must be dismissed.[7]

---

[6] True, Article III refers to "segments" while Article IV refers to "groups of participating members," and the term "group" is undefined in the Trust Indenture. But the Fund's Summary Plan Description provides that in addition to segments based on industry, certain "employee groups" employed by the Fund or Participating Local Unions are eligible become Fund participants upon approval by the Trustees. Compl. Ex. A, Summary Plan Description 11, ECF No. 4. The term "group" as used in Article IV is therefore not at odds with Article III, nor does it mandate a conclusion that all members in a participating local must contribute at the same rate.

[7] Notably, the plaintiffs do not allege in their complaint or argue in their brief that the Trustees permitted members of the same group or segment within Local 458M to contribute at different levels or permitted any participating Fund member to contribute less than $5.00 per week. Because they allege only that the Trustees breached their fiduciary duties by failing to enforce uniform contribution rates across the *entire local*, the plaintiffs fail to state a claim.

Count I also alleges, however, that the Trustees failed to enforce terms of the Trust Indenture requiring all members of a group that voted to participate in the Fund to become and remain participants in the Fund. Compl. ¶ 89. That is a slightly different argument. Nevertheless, it also fails, because the plaintiffs do not allege that any members of a group that did in fact vote to participate in the Fund later withdrew from the Fund; to the contrary, the complaint suggests that the allegedly non-participating segments of Local 458M never voted to participate in the first place. *See id.* ¶ 47 (letter from Local 458M Executive Board stressing that shops within the union that do not participate in the Fund had never participated previously). And while Local 458M's bylaws might require all of its members to participate in the Fund, the Trust Indenture, per Article III, does not.[8] For these reasons, the claim asserted against the Trustees in Count I is dismissed without prejudice.

## II. Count II: The Union

In Count II, the plaintiffs allege that the Union breached its fiduciary duty to the Fund by failing to properly fund the plan due to its selective enforcement of its by-laws, which require all union members to participate. The provision of the bylaws at issue is Article 14.2(b), which states:

> All members of the Local, except general worker members, and members outside the trade, are required to become participating members of the Pension Fund. General worker members associated with the Industry, may become participating

---

[8] The Court notes that while ERISA holds plan fiduciaries liable for a co-fiduciary's breaches in certain circumstances, *see* 29 U.S.C. § 1105, the plaintiffs do not advance that argument. Nor would such an argument be successful in light of the Court's conclusion that the Union defendants are not plan fiduciaries, *see supra* Part II. And to the extent that the plaintiffs argue that the Trustees breached their fiduciary duty not by, as the complaint alleges, failing to enforce provisions of the **Trust Indenture**, but instead by failing to ensure that Local 458M enforced provisions of ***its own by-laws***, "[f]inding that Plan administrators may breach a fiduciary duty vicariously through the actions of a non-fiduciary would vitiate our requirement that an ERISA claim for breach of a fiduciary duty must be asserted against plan fiduciaries." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 640 (7th Cir. 2007) (rejecting argument that plan fiduciary could be liable for non-fiduciary's deceptive statement to plan beneficiaries).

> members of the Pension Fund if they so elect within 3 months from date of initiation.

Compl. Ex. B at 19, ECF No. 1. The Union does not dispute that its bylaws require all local members to participate in the Fund or that it has allowed some members to opt out of participating. Instead, it argues that it cannot be held liable under ERISA because the complaint does not establish that it acted in a fiduciary capacity. The Court agrees.

In relevant part, ERISA provides that a person is a plan fiduciary to the extent he or she exercises discretionary authority or control over plan administration or management or to the extent he or she exercises any authority or control over management or disposition of the plan's assets. 29 U.S.C. § 1002(21)(A). Plan management "consists of such activities as investment of pension funds and communications to employees about plan administration." *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 788 (7th Cir. 2005) (quoting *King v. National Human Resource Committee*, 218 F.3d 719, 724 (7th Cir. 2000)). In contrast, a plan "settlor" designs, adopts, modifies, or terminates plans, but is not involved in plan management or administration. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Where, as here, an employer (or union) "selects levels of funding" and accordingly "decide[s] who receives pension benefits and in what amounts," they are acting in a settlor capacity, not as a fiduciary. *Johnson v. Georgia-Pac. Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994).

The plaintiffs urge this Court to conclude that the Union defendants are functional fiduciaries because they 1) exercised control over plan assets by forwarding contributions withheld from employee paychecks to the Fund, 2) exercised control over the management of plan assets by selectively enforcing its by-laws to improperly limit the amount of contributions owed to the Fund, and 3) exercised discretionary control over Fund management by changing the plaintiffs'

union membership statuses and denying them access to Fund benefits. None of these arguments are persuasive.

As to the first, even accepting the plaintiffs' contention that employee contributions become plan assets as soon as they are withheld from paychecks (*see, e.g.*, *United States v. Whiting*, 471 F.3d 792, 799 (7th Cir. 2006)), their complaint challenges only the Union's alleged failure to set contribution levels in accordance with its by-laws **before** contributions are withheld; the plaintiffs are not concerned with the actual act of remitting withheld contributions to the Fund.[9] Any fiduciary status the Union might have at the time it remits contributions to the Fund is therefore irrelevant to the claim advanced here.[10] *See Johnson*, 19 F.3d at 1188 ("[P]eople may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others.").

The plaintiffs' second argument is somewhat difficult to decipher, but they appear to contend that the Union is a fiduciary because it does more than merely set contribution rates; it also has the authority to compel compliance with its bylaws requiring all members to participate in the Fund. But compelling its members to become Fund participants is just another way of

---

[9] To that point, the cases cited by the plaintiffs in support of this argument deal with an alleged fiduciary's failure to forward contributions to a Fund once they were received, not with whether the amount withheld was correct under the plan documents. *See United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir. 1991) (alleged fiduciary received money from employee but did not remit it to the fund); *Carpenters Combined Funds ex rel. Klein v. Klingman,* 2:10-CV-63, 2010 WL 3432837, at *1 (W.D. Pa. Aug. 25, 2010) (maintaining that alleged fiduciary failed to submit payment of contribution to pension plan); *Bd. of Trustees of Airconditioning & Refrigeration Indus. Health & Welfare Tr. Fund v. J.R.D. Mech. Services, Inc.*, 99 F. Supp. 2d 1115, 1118 (C.D. Cal. 1999) (alleged fiduciary chose his creditors rather than transmitting contributions to the Fund); *Pension Ben. Guar. Corp. v. Solmsen*, 671 F. Supp. 938, 945 (E.D.N.Y. 1987) (alleged fiduciary did not forward to fund contributions to be allocated to pensioners).

[10] *See generally In re Luna,* 406 F.3d 1192, 1206 n.13 (10th Cir. 2005) ("Where an employer is entrusted with employee funds for remittance to a claims administrator, the employer is acting in a fiduciary capacity under ERISA.") (citing *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 219 (4th Cir. 2005)).

controlling the amount of revenue that will be contributed to a plan, which, as discussed above, is a settlor function rather than a fiduciary function. The plaintiffs' conclusory allegation that the Union "managed" plan assets does not warrant a different conclusion.

Finally, the plaintiffs have failed to explain how the Union's decision to disclaim interest in its Bell Litho members (which resulted in the vesting of their Fund contributions) has anything to do with Fund management. The decision may have adversely affected the plaintiffs' interests as beneficiaries, but that is irrelevant to an ERISA breach of fiduciary duty claim if the person making the decision was not acting as a plan fiduciary when doing so. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

### III. Counts III and IV

Count III and IV advance state law breach of contract and fraud theories against the Union. The Union argues that because the Court has dismissed the claims over which it had original jurisdiction, it should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the claims asserted in Counts III and IV.[11] The plaintiffs do not dispute the propriety of doing so. Accordingly, the claims asserted in Counts III and IV are dismissed without prejudice.

*   *   *

---

[11] As a technical matter, the "claim" asserted in Count III, which is premised on the Union's alleged failure to enforce its by-laws, is the same "claim" asserted and dismissed in Count II (*i.e.*, it is based on the same set of facts), albeit under a different legal theory over which the Court lacks original jurisdiction to consider. The common law fraud theory advanced in Count IV is premised on a different set of facts—the Union's alleged fraudulent misrepresentations to the plaintiffs— and therefore constitutes a separate claim. Rule 12(b)(6) speaks of the dismissal of claims, not legal theories. *See also King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."). A claim should survive, then, if it could proceed under ***any*** legal theory. Nevertheless, without any argument from the parties, it is not the Court's duty to assess whether there is a legal theory which would permit the Court to exercise original federal jurisdiction over the claim asserted in Count IV, so it is dismissed without prejudice.

The Court grants the Trustees' motion to dismiss the claim asserted in Count I of the plaintiffs' complaint because the plaintiffs failed to adequately allege that the Trustees breached a fiduciary duty. The Court also grants the Union's motion to dismiss, because the plaintiffs failed to adequately allege that the Union acted in a fiduciary capacity when it permitted union members to contribute to the Fund at different levels (or not at all). Because the Court has dismissed the claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over the claims asserted in Counts III and IV. The dismissals are without prejudice; if the plaintiff can cure the deficiencies described above or advance a legal theory for the claim asserted in Count IV over which the Court would have jurisdiction, it may file an amended complaint by July 29, 2019.

Date: June 26, 2019

John J. Tharp, Jr.
United States District Judge